1

**HOWARD LAW, PC**
2
VINCENT D. HOWARD (SBN 232478)
vhoward@howardlawpc.com
3
GREGORY H. D. ALUMIT (SBN 257124)
galumit@howardlawpc.com
4
675 Anton Boulevard, First Floor
Costa Mesa, CA 92626
5
Tel.: (800) 872-5925
Fax: (888) 533-7310

6

7
**THE LAW OFFICES OF JOSEPH R.**          **ARBOGAST LAW**
**MANNING, JR.**                            A Professional Corporation
8
A PROFESSIONAL CORPORATION                  DAVID M. ARBOGAST (SBN 167571)
                                            david@arbogastlawpc.com
9
Joseph R. Manning, Jr., Esq. (SBN 223381)  11400 W. Olympic Blvd., 2nd Floor
                                            Los Angeles, CA 90064
10
Michael J. Manning, Esq. (SBN. 286879)     Tel.: (310) 477-7200
Phillip B. Nghiem, Esq. (SBN 291525)
11
4667 MacArthur Boulevard, Suite 150
12
Newport Beach, CA 92660
Tel: (949) 200-8755
13
Fax: (866) 843-8308

14
Attorneys for Plaintiffs and the proposed Class

15
**UNITED STATES DISTRICT COURT**

16
**CENTRAL DISTRICT OF CALIFORNIA**

17
LAURA WIEGMAN, on behalf of          )   **CASE NO.**  8:14-cv-2041
herself and of all others similarly  )
18
situated,                            )
                                     )
19
              Plaintiff,             )   **CLASS ACTION**
                                     )
20
vs.                                  )   **COMPLAINT FOR DAMAGES**
                                     )   **PURSUANT TO THE TELEPHONE**
21
MACY'S CORPORATE SERVICES,           )   **CONSUMER PROTECTION ACT,**
INC., A California Corporation, D/B/A )   **47 U.S.C. § 227 et seq.**
22
Macy's, Inc., and DOES 1 to 10       )
                                     )   **JURY TRIAL DEMANDED**
23
              Defendants.            )
                                     )
24                                   )
                                     )
25                                   )
                                     )
26                                   )

27

28

1  Plaintiff Laura Wiegman ("Plaintiff"), on behalf of herself and all others
2  similarly situated, complains and alleges as follows:

3  **I.      INTRODUCTION**

4      1.      Defendant MACY'S CORPORATE SERVICES, INC., A California
5  Corporation, D/B/A Macy's, Inc. ("Defendant" or "Macy's") is a national retailer.  To
6  attract customers, Defendant advertises via radio, print and online.  Defendant collects
7  and stores data, including cellular telephone numbers, for the purpose of sending
8  automated blast messages promoting its products to consumers' mobile phones in the
9  form of Short Message Service ("SMS") text messages, the text messaging service
10  component of mobile telephones.  The Telephone Consumer Protection Act ("TCPA"),
11  47 U.S.C. § 227, *et seq.* and its implementing regulations, 47 C.F.R. §64.1200, *et seq.*
12  prohibit companies, such as Defendant, from sending automated SMS text messages to
13  mobile telephones without first obtaining consent.  Defendant has violated, and
14  continues to violate, the TCPA and its regulations by sending automated SMS text
15  messages to cellular telephone subscribers who have not expressly consented to
16  receiving such messages.

17      2.      In a Report and Order adopted on June 26, 2003, the Federal
18  Communications Commission ("FCC") held that:

19      If the call is intended to offer property, goods, or services for sale either during
20      the call, or in the future (such as in response to a message that provides a toll-
21      free number), that call is an advertisement.  Similarly, a message that seeks to
22      help sell or market a business' products, constitutes an advertisement if the
23      individuals are encouraged to purchase, rent or invest in property, goods, or
24      services during or after the call.

25  *In the Matter of Rules and Regulations Implementing the Telephone Consumer*
26  *Protection Act of 1991*, 2003 WL 21517853, 18 F.C.C.R. 14014 at ¶ 142 (FCC July 3,
27  2003).

28  ///

Complaint for Damages Pursuant to the
Telephone Consumer Protection Act 47 U.S.C. § 227 et seq.

1    The FCC then went on to hold that:

2    [U]nder the TCPA, it is unlawful to make any call using an automatic telephone

3    dialing system or an artificial or prerecorded message to any wireless telephone

4    number.   Both the statute and our rules prohibit these calls, with limited

5    exceptions, 'to any telephone number assigned to a paging service, cellular

6    telephone service, specialized mobile radio service, or other common carrier

7    service, or any service for which the called party is charged.' This encompasses

8    both voice calls and text calls to wireless numbers including, for example, short

9    message service (SMS) calls, provided the call is made to a telephone number

10   assigned to such service. Congress found that automated or prerecorded

11   telephone calls were a greater nuisance and invasion of privacy than live

12   solicitation calls. Moreover, such calls can be costly and inconvenient. The

13   Commission has long recognized, and the record in this proceeding supports the

14   same conclusion, that wireless customers are charged for incoming calls whether

15   they pay in advance or after the minutes are used.  Wireless subscribers who

16   purchase a large 'bucket' of minutes at a fixed rate nevertheless are charged for

17   those minutes, and for any minutes that exceed the 'bucket' allowance.  This

18   'bucket' could be exceeded more quickly if consumers receive numerous

19   unwanted telemarketing calls.  Moreover, as several commenters point out,

20   telemarketers have no way to determine how consumers are charged for their

21   wireless service.

22   *In the Matter of Rules and Regulations Implementing the Telephone Consumer*

23   *Protection Act of 1991*, 2003 WL 21517853, 18 F.C.C.R. 14014 at ¶ 165.

24       3.    By sending such SMS marketing text messages to consumers, Defendant

25   has caused consumers actual harm, including the aggravation and privacy invasion that

26   accompanies receiving unsolicited text messages.  In particular, consumers are damaged

27   by having to pay cellular telephone service providers for the receipt of Defendant's

28   ///

Complaint for Damages Pursuant to the
Telephone Consumer Protection Act 47 U.S.C. § 227 et seq.

1   unsolicited text messages and must endure the aggravation and nuisance that

2   accompanies the receipt of unwanted text messages.

3       4.    Plaintiff brings this suit under the TCPA on behalf of herself and a class

4   of similarly situated persons.  Plaintiff and the class seek an award of statutory

5   damages, together with costs and reasonable attorney's fees.

6   **II.    JURISDICTION AND VENUE**

7       5.    This Court has jurisdiction under 28 U.S.C. §1331.  This case involves a

8   question of federal law, 47 U.S.C. § 227, *et seq*. (TCPA).  Damages are available under

9   47 U.S.C. § 227(b)(3).

10      6.    Venue is proper in this District because Defendant engages in business in

11  this District and a substantial part of the events or omissions giving rise to this claim

12  occurred here.

13  **III.   PARTIES**

14      7.    Plaintiff is, and at all times mentioned herein was, a citizen and resident of

15  the State of California and the County of Orange.  Plaintiff is, and at all times

16  mentioned herein was, a "person" as defined by 47 U.S.C. § 153 (39).

17      8.    Plaintiff is informed and believes, and thereon alleges, that Defendant is,

18  and at all times mentioned herein was, a California Corporation whose primary business

19  address is in Ohio and is a "person," as defined by 47 U.S.C. § 153 (39).

20      9.    Plaintiff alleges that, at all times relevant herein, Defendant conducted

21  business in the State of California and in the County of Orange, and within this judicial

22  district.

23  **IV.    FACTUAL ALLEGATIONS**

24      10.   In recent years, marketers, who often felt stymied by federal or state laws

25  limiting solicitations, have looked to alternative technologies through which to send

26  bulk solicitations cheaply.  One of the newest types of bulk marketing is through SMS.

27  SMS allows marketers to send (and receive) short messages, usually limited to 160

28  characters, to (and from) cellular telephone subscriber's cellular telephone devices.

Complaint for Damages Pursuant to the
Telephone Consumer Protection Act 47 U.S.C. § 227 et seq.

1  11.    An SMS message is directed to a wireless device through use of the
2  device's assigned telephone number.  The message sender's telephone number is
3  preserved as part of the recipient's message, so that the recipient knows, at least by
4  number, who is sending the message.  When an SMS message is successful, the
5  recipient's cellular phone typically rings, alerting him or her that the phone is receiving
6  a text message.  As cellular telephones are inherently mobile and are frequently carried
7  on their owner's person, calls to cellular telephones, including SMS messages, may be
8  received by the called party virtually anywhere worldwide.

9  12.    The use of SMS messaging (known colloquially as "text messaging") has
10  become ever-present in the United States.

11  13.    Marketers have seized on this billion-dollar industry as a vast marketing
12  and exposure opportunity.  Using SMS technology, companies and individuals can now
13  extend the promotional reach of their products, brands, services and ideas to potentially
14  millions of consumers, almost instantaneously.  And, with SMS technology, marketers
15  know with near certainty that their message is received.

16  14.    Many companies, including Defendant, use automated computer
17  equipment to send bulk SMS text messages to cellular telephone subscribers using a
18  unique five or six digit number called "short code," as opposed to using an ordinary ten-
19  digit telephone number.  U.S. companies obtain short code numbers form an
20  independent agency, Neustar, Inc. ("Neustar"), which manages and assigns U.S. short
21  code numbers in order to run automated mobile text messaging applications.

22  15.    Unlike conventional solicitations, SMS text messages actually cost the
23  recipients of the marketing messages money.  Cellular telephone users must pay their
24  respective wireless service providers to receive text messages, either individually or as
25  part of a specified (and often limited) plan, regardless of whether or not the incoming
26  message is authorized.

27  16.    By sending such SMS text messages to consumers, Defendant has caused
28  consumers actual harm, including the aggravation and privacy invasion that

4
Complaint for Damages Pursuant to the
Telephone Consumer Protection Act 47 U.S.C. § 227 et seq.

1   accompanies receiving unsolicited text messages.  Moreover, consumers are damaged

2   by having to pay cellular telephone service providers for the receipt of Defendant's

3   unsolicited text messages.

4          17.    Pursuant to the TCPA, a company must obtain consent before sending

5   automated SMS text messages to a cellular telephone. *See* 47 U.S.C. § 227, *et seq.*  In

6   many instances, Defendant's SMS text messages sent to consumers' cellular telephones

7   violate the TCPA because the telephone owner did not expressly consent to receiving

8   the SMS text messages.

9          **A.    CONTACT WITH PLAINTIFF**

10         18.    On September 3, 2014, Plaintiff received the following text message from

11  Defendant:

12                Macy's Promo Alerts: Welcome! Stay up-to-date on sales, events and

13                more! Max 3 msg/wk.  Reply STOP to cancel. Reply HELP for help.

14         19.    On September 5, 2014, Plaintiff received the following text message from

15  Defendant:

16                Macy's Promo Alerts: The best way to save big? Check out our One Day

17                Sale for Deals of the Day, Specials & more! Shp now: http://bit/ly/odS1

18                Reply STOP to cancel

19         20.    On September 7, 2014, Plaintiff received the following text message from

20  Defendant:

21                Macy's Promo Alerts: It's Super Sunday, which means: extra 20% off,

22                today only! Details: http://bit.ly/McSs9 Shop now: http://bit.ly/McYhp

23                Rply STOP to cancel.

24         21.    On September 9, 2014, Plaintiff received the following text message from

25  Defendant:

26                Macy's Promo Alerts: Don't miss Fashion Rocks: live 9/8pm CST on

27                CBS for a night of fashion, music & shopping! Details: http://bit.ly/FRks1

28                Reply STOP to cancel.

Complaint for Damages Pursuant to the
Telephone Consumer Protection Act 47 U.S.C. § 227 et seq.

22.    On September 12, 2014, Plaintiff received the following text message from Defendant:

> Macy's Promo Alerts: Get extra 20% off customer favorites + 3Day Specials!    Details:    http://bit.ly/Cfave1    Use    code    FAVES: http://bit.ly/mcHp9 Rply STOP to cancel

23.    On September 15, 2014, Plaintiff received the following text message from Defendant:

> Macy's Promo Alerts: Get extra 20% off at our VIP Sale! It's kind of a big deal. Details: http://bit.ly/Moff1 Shop now: http://bit.ly/mYviP Rply STOP to cancel.

24.    On September 21, 2014, Plaintiff received the following text message from Defendant:

> Macy's Promo Alerts: Last chance! Shop now for extra 20% off designer names! Details: http://bit.ly/vIpsL Use code VIP: http://bit.ly/VlpSl Rply STOP to cancel.

25.    On September 24, 2014, Plaintiff received the following text message from Defendant:

> Macy's Promo Alerts: Introducing My Wallet: a new way to store & manage    offers    &    payment    options    online.       Learn    more: http://bit.ly/mywlt2 Reply STOP to cancel.

26.    On September 26, 2014, Plaintiff received the following text message from Defendant:

> Macy's Promo Alerts: It's Super Saturday: get extra 15% off + Specials! Details: http://bit.ly/SSMcy Use code SUPER: http://bit.ly/SSHP16 Reply STOP to cancel.

///

///

///

1    27.    On September 28, 2014, Plaintiff received the following text message

2  from Defendant:

3         Macy's Promo Alerts: No more waiting: place orders online & pick up in-

4         store! Learn more about this new way to shop: http://bit.lymboPs Reply

5         HELP=help.

6    28.    On October 1, 2014, Plaintiff received the following text message from

7  Defendant:

8         Macy's Promo Alerts: The Ultimate Wardrobe Sale: get extra 20% off!

9         Details:  http://bit.ly.MCUWS1  Shop  now:   http://bit.ly/MUwS8  Reply

10         HELP=help.

11    29.    On October 5, 2014, Plaintiff received the following text message from

12  Defendant:

13         Macy's Promo Alerts: Ends tonight! Get extra 20%  off fall wardrobe

14         picks now.  Details: http://bit.ly/LDUWS Shop now: http://bit.ly/LDUwS

15         Reply HELP=help.

16    30.    On October 8, 2014, Plaintiff received the following text message from

17  Defendant:

18         Macy's Promo Alerts: Columbus day Sale: get extra 20% off the latest

19         styles now! Details: http://bit.ly/MCCD4 Shop now: http://bit.ly/MCCD7

20         Reply HELP=help.

21    31.    On October 13, 2014, Plaintiff received at least one text messages from

22  Defendant as follows:

23         Macy's Promo Alerts: Ends tonight: get extra 20% off + Specials now!

24         Details:   http://bit.ly/LdCs5   Shop   now:   http://bit.ly/LdCs6   Reply

25         HELP=help

26  ///

27  ///

28  ///

Complaint for Damages Pursuant to the
Telephone Consumer Protection Act 47 U.S.C. § 227 et seq.

1    32.    On October 17, 2014, Plaintiff received the following text message from

2    Defendant:

3          Macy's Promo Alerts: It's our One Day Sale: shop great deals + limited-

4          time Specials now! Shop now: http://bit.ly/OdYsD Reply HELP=help.

5

6    33.    On October 19, 2014, Plaintiff received the following text message from

7    Defendant:

8          Macy's Promo Alerts: Super Sunday: extra 20% off fab fall picks!

9          Details:    http://bit.ly/SsmD    Shop    now:    http://bit.ly/sSUND    Reply

10         HELP=help.

11   34.    On October 24, 2014, Plaintiff received the following text message from

12   Defendant:

13         Macy's Promo Alerts: Shop Super Saturday: get extra 20% off + Specials!

14         Details:    http://bit.ly/SSat1    Shop    now:    http://bit.ly/SStHp    Reply

15         HELP=help.

16   35.    On October 26, 2014, Plaintiff received the following text message from

17   Defendant:

18         Macy's Promo Alerts: Last chance to get extra 20% off + Specials!

19         Details    http://bit.ly/SSt87    Shop    now:    http://bit.ly/Sst22    Reply

20         HELP=help.

21   36.    On October 28, 2014, Plaintiff received the following text message from

22   Defendant:

23         Macy's Promo Alerts: What time is it? Time for Our Lowest Prices of the

24         Season! Save 20-60% + shop Specials now: http://bit.ly/LpOs7 Reply

25         HELP=help.

26   ///

27   ///

28   ///

Complaint for Damages Pursuant to the
Telephone Consumer Protection Act 47 U.S.C. § 227 et seq.

37.     On November 3, 2014, Plaintiff received the following text message from Defendant:

> Macy's Promo Alerts: Don't miss Our Lowest Prices of the Season + Specials end tomorrow! Shop now & save big: http://bit.ly/lPOSLd Reply HELP=help.

38.     On November 5, 2014, Plaintiff received the following text message from Defendant:

> Macy's Promo Alerts: Shop our Veterans' Day Sale for extra 20% off + Specials! Details: http://bit.ly/VetSle Shop now: http://bit.ly/VtsDyHP Reply HELP=help.

39.     On November 11, 2014, Plaintiff received the following text message from Defendant:

> Macy's Promo Alerts:  Ends tonight: get extra 20% off + Specials! Details: http://bit.ly/Vts01 Shop now: http://bit.ly/VtsHp Reply HELP=help.

40.     On November 16, 2014, Plaintiff received the following text message from Defendant:

> Macy's Promo Alerts: Our 3-Day Spectacular Sale ends tonight: get extra 20% off! Details: http://bit.ly/3dYs1 Shop now: http://bit.ly/3DyHp Reply HELP=help.

41.     On November 18, 2014, Plaintiff received the following text message from Defendant:

> Macy's Promo Alerts: Our Biggest One Day Sale: enjoy Our Lowest Prices of the Season + Free Shipping at $75! Shop now: http://bit.ly/ODs15 Reply HELP=help.

42.     The SMS short code number for all of the unauthorized text messages that Plaintiff received was 622-97.

///

Complaint for Damages Pursuant to the
Telephone Consumer Protection Act 47 U.S.C. § 227 et seq.

1   43.   The content of the text messages Plaintiff received was generic,

2   impersonal and commercial in nature, indicating that they were sent to a group of

3   consumers *en masse*.

4   44.   Defendant did not at any time request or obtain Plaintiff's prior express

5   consent to receive unsolicited text messages utilizing a prerecorded, artificial voice or

6   ATDS, pursuant to 47 U.S.C. § 227(b)(1)(A).

7   45.   The telephone number to which Defendant, or its agents, texted was

8   assigned to a cellular telephone service for which Plaintiff incurs a charge for incoming

9   calls pursuant to 47 U.S.C. § 227 (b)(1).

10   46.   The last four digits of Plaintiff's cellular telephone numbers are "4778."

11   47.   The text messages from Defendant, or its agents, constituted calls that

12   were not for emergency purposes as defined by 47 U.S.C. §227 (b)(1)(A)(i).

13   48.   Defendant sent these text messages via an automatic telephone dialing

14   system ("ATDS") as defined by 47 U.S.C. § 227(a)(1).

15   49.   This ATDS utilized by Defendant has the capacity to store or produce

16   telephone numbers to be called, using a random or sequential number generator.[1]

17   50.   This ATDS utilized by Defendant also has the capacity to  automatically

18   dial telephone numbers from a list or database of telephone numbers without human

19   intervention.[2]

20   ///

21   ///

22   [1]   "The statutory definition contemplates autodialing equipment that either stores or produces
numbers" and the equipment need only have the "*capacity* to store or produce telephone numbers."

23   *See In the Matter of Rules & Regulations Implementing the Telephone Consumer Protection Act of
1991, 2003* WL 21517853, 18 F.C.C.R. 14115 (FCC July 3, 2003) (Italics in original) (underlining

24   added).  The statutory phrase "using a random or sequential number generator" modifies only the last
antecedent "produce telephone numbers" and not the word "to store," as it makes no sense to say that

25   one could "store" numbers using a number generator.

26   [2]   The FCC has emphasized that the ATDS definition covers any equipment "that has the specified
capacity to generate numbers and dial them without human intervention *regardless of whether the

27   numbers called are randomly or sequentially generated or come from calling lists*."  *In re Rules &
Regulations Implementing the Telephone Consumer Protection Act of 1991*, 27 F.C.C. Rcd 15391,

28   15392 n.5 (2012) (emphasis modified).

Complaint for Damages Pursuant to the
Telephone Consumer Protection Act 47 U.S.C. § 227 et seq.

51.     The text messages from Defendant also constitute artificial or prerecorded voice calls pursuant to 47 U.S.C. §227(a)(1).

52.     The text messages sent utilizing an ATDS and/or an artificial or prerecorded voice alleged in paragraphs 18 and 41 from Defendant, or its agents, to Plaintiff's cellular telephone were sent without Plaintiff's "prior express consent."

53.     Plaintiff alleges that each text message from Defendant violated 47 U.S.C. § 227(b)(1).

54.     Upon reasonable investigation into the Defendant's calling patterns, Plaintiff alleges that the Defendant, individually or through its agents, placed or directed the mass placement of text messages to cell phones nationwide four years prior to the date this complaint was filed.

## V.     CLASS ACTION ALLEGATIONS

55.     Plaintiff brings this action on behalf of herself, and on behalf of all others similarly situated, pursuant to Federal Rule of Civil Procedure, Rules 23(a) and 23(b). The Class that Plaintiff seeks to represent is defined as follows:

> All persons within the United States to whose cellular
> telephone number Defendant placed a telephone call
> via text message without that person's prior express
> consent, at any time beginning four (4) years prior to
> the filing of the Complaint through the date notice is
> mailed to the Class.

Excluded from the Class are Defendant and any entities in which Defendant has a controlling interest, Defendant's agents and employees, the Judge to whom this action is assigned and any member of the Judge's staff and immediate family, and claims for personal injury, wrongful death and/or emotional distress.

Plaintiffs reserve the right to amend or otherwise alter the class definitions presented to the Court at the appropriate time, or to propose or eliminate sub-Classes in

///

Complaint for Damages Pursuant to the
Telephone Consumer Protection Act 47 U.S.C. § 227 et seq.

1    response to facts learned through discovery or legal arguments advanced by Defendants

2    or otherwise.

3        56.    Numerosity:  The Class is so numerous that the individual joinder of all

4    members thereof  is impracticable under the circumstances of this case.  While the exact

5    number of class members is unknown at this time, Plaintiff is informed and believes

6    that the entire Class consists of approximately tens of thousands of members.

7        57.    Commonality:  Common questions of law or fact are shared by class

8    members.  This action is suitable for class treatment, because these common questions

9    of fact and law predominate over any individual issues.   Such common questions

10   include, but are not limited to, the following:

11           a.    Whether Defendant made text calls to the Class using an automatic

12                 telephone dialing system and/or autodialer and/or an artificial or

13                 prerecorded voice;

14           b.    Whether Defendant's conduct violates 47 U.S.C. § 227(b)(1(A);

15           c.    Whether Defendant's conduct violates 47 C.F.R. § 64.1200(a)(1);

16           d.    Whether Plaintiff and the Class members are entitled to damages,

17                 costs and/or attorney's fees from Defendant;

18           e.    Whether Plaintiff and the Class members are entitled to increased

19                 damages (equal to not more than three times the amount of

20                 damages) based on the willfulness of Defendant's conduct; and

21           f.    Whether Defendants' affirmative defenses, if any, raise common

22                 issues of fact or law as to Plaintiff and Class members as a whole.

23       58.    Typicality:  Plaintiff's claims are typical of the claims of absent Class

24   members.  Plaintiff and the other Class members were subjected to the same kind of

25   unlawful conduct and the claims of Plaintiff and the other Class members are based on

26   the same legal theories.

27       59.    Adequacy:  Plaintiff is an adequate representative of the Class because her

28   interests do not conflict with the interests of the other members of the Class Plaintiff

                                    12                  Complaint for Damages Pursuant to the
                                                 Telephone Consumer Protection Act 47 U.S.C. § 227 et seq.

1  seeks to represent.    Plaintiff has retained counsel competent and experienced in

2  complex class action litigation and Plaintiff intends on prosecuting this action

3  vigorously.    The interests of members of the Class will be fairly and adequately

4  protected by Plaintiff and her counsel.

5        60.    Ascertainable Class:   The proposed class is ascertainable in that the

6  members can be identified and located using information contained in Defendant's

7  records.

8        61.    This case is brought and can be maintained as a class action under Rule

9  23(b)(1) and 23(b)(3):

10           a.      Prosecuting Separate Actions Would Create Risk Of:

11                i.  Inconsistent   or   varying   adjudications   with   respect   to

12                    individual   Class   members   which   would   establish

13                    incompatible standards of conduct for Defendant; or

14                ii. Adjudications with respect to individual Class members,

15                    which would, as a practical matter, be dispositive of the

16                    interests of the other Class members not parties to the

17                    adjudications, or substantially impair or impede their ability

18                    to protect their interests;

19           b.      Predominant Questions of Law or Fact:  Questions of law or

20                   fact common to all Class members, including those identified

21                   above, predominate over questions affecting only individual

22                   Class members (if any), and a class action is superior to other

23                   available methods for the fair and efficient adjudication of the

24                   controversy.  Class action treatment will allow a large number

25                   of similarly situated consumers to prosecute their common

26                   claims in a single forum, simultaneously, efficiently, and

27                   without the unnecessary duplication of effort and expense that

28                   numerous individual actions would require.  Moreover, absent

Complaint for Damages Pursuant to the
Telephone Consumer Protection Act 47 U.S.C. § 227 et seq.

1  class treatment of this controversy, the amount of individual

2  Class members' losses in comparison to the enormous cost of

3  litigation makes it almost certain that few Class members would

4  ever be able to even seek, let alone obtain, redress for their

5  injuries.

6  ## FIRST CAUSE OF ACTION

7  **(Violation of the Telephone Consumer Protection Act, 47 U.S.C. § 227(b)(1)(A)**
**and Implementing Regulations, 47 C.F.R. § 64.1200(a)(1),**

8  **On Behalf of Plaintiff and the Class)**

9

10  62.   Plaintiff incorporates by reference all of the above paragraphs of this

11  Complaint as though fully stated herein.

12  63.   The TCPA, 47 U.S.C. § 227(b)(1)(A)(iii), makes it "unlawful for any

13  person within the United States . . . to make any call (other than a call made for

14  emergency purposes or made with the prior express consent of the called party) using

15  any automatic telephone dialing system or an artificial or prerecorded voice... to any

16  telephone number assigned to a . . . cellular telephone."

17  64.   The TCPA's implementing regulation, 47 C.F.R. § 64.1200(a)(1), further

18  provides that "[n]o person or entity may . . . initiate any telephone call (other than a call

19  made for emergency purposes or is made with the prior express consent of the called

20  party) using an automatic telephone dialing system or an artificial or prerecorded voice .

21  . . [t]o any telephone number assigned to a . . . cellular telephone."  A text message is a

22  "call" within the meaning of the TCPA. *See Satterfield v. Simon & Schuster, Inc.*, 569

23  F.3d 946, 952 (9th Cir. 2009).

24  65.   Defendant violated   both   47   U.S.C.   §   227(b)(1)(A)(iii)   and   its

25  implementing regulation, 47 C.F.R. § 64.1200(a)(1).  Defendant made or initiated, or

26  caused to be made or initiated, unauthorized text calls to Plaintiff and members of the

27  Class using an automatic telephone dialing system ("ATDS") and/or autodialer, within

28  the meaning of 47 U.S.C. § 227(a) and 47 C.F.R. § 64.1200(f)(2).  An ATDS includes

14

Complaint for Damages Pursuant to the
Telephone Consumer Protection Act 47 U.S.C. § 227 et seq.

1  equipment that has "the capacity to store or produce numbers and dial those numbers at

2  random, in sequential order, or **from a database of numbers**." *See In the Matter of*

3  *Rules & Regulations Implementing the Telephone Consumer Protection Act of 1991*,

4  2003 WL 21517853, 18 F.C.C.R. 14014 ¶ 131 (FCC July 3, 2003) (emphasis added)

5  (noting that the basic function of an ATDS is "the capacity to dial numbers without

6  human intervention" and that excluding from the definition of an ATDS various

7  autodialing equipment "simply because it relies on a given set of numbers would lead to

8  an unintended result," and that "the purpose of the requirement that equipment have

9  'the capacity to store or produce telephone numbers to be called' is to ensure that the

10  prohibition on autodialed calls not be circumvented"); *In the Matter of Rules &*

11  *Regulations Implementing the Telephone Consumer Protection Act of 1991*, 2008 WL

12  65485, 23 F.C.C.R. 559 ¶ 12 (FCC Jan 4, 2008) (rejecting argument that "[equipment]

13  meets the definition of autodialer only when it randomly or sequentially generates

14  telephone numbers, not when it dials numbers from customer telephone lists"); *In re*

15  *Rules & Regulations Implementing the Telephone Consumer Protection Act of 1991*, 27

16  F.C.C. Rcd 15391, 15392 n.5 (FCC 2012) (ATDS includes any equipment "that has the

17  specified capacity to generate numbers and dial them without human intervention

18  regardless of whether the numbers called are randomly or sequentially generated or

19  come from calling lists").

20        66.    Defendant's equipment has the capacity to, and did in fact, store and dial

21  Plaintiff's and the Class' telephone numbers from its database without human

22  intervention.

23        67.    In addition to autodialing phone numbers from its database, the equipment

24  Defendant used also has the capacity to produce telephone numbers to be called, using a

25  random or sequential number generator, and to dial such numbers.

26        68.    By using such equipment, Defendant was able to make thousands upon

27  thousands of text calls to consumers automatically without human intervention.  These

28  ///

1  calls were made *en masse* and without the prior consent of Plaintiff and members of the

2  Class.

3        69.    In addition, and alternatively, Defendant's unauthorized text calls to

4  Plaintiff and members of the Class were made using "an artificial or prerecorded voice"

5  within the meaning of 47 U.S.C. § 227(b)(1)(A) and 47 C.F.R. § 64.1200(a)(1).  The

6  term "voice" is not limited to verbal communications, and includes written expressions.

7  *See, e.g., Dictionary.com*, http://dictionary.reference.com/browse/voice (last visited

8  June 22, 2014) (defining "voice" as, among other things, "expression in spoken or

9  written    words,    or    by    other    means"); Collins    English    Dictionary,

10 http://www.collinsdictionary.com/ dictionary/english/voice (defining "voice" to include

11 "written or spoken expression") (last visited June 22, 2014).  The adjective "artificial"

12 includes communications "produced by man" that are "not occurring naturally." Collins

13 English Dictionary, http://www.collinsdictionary.com/dictionary/ english/ artificial (last

14 visited June 12, 2014).    The adjective "prerecorded" includes communications

15 "containing previously recorded information." *Dictionary.com*, http://dictionary.refer

16 ence.com/browse/voice (last visited June 22, 2014).  Text messages, such as the text

17 messages here, that are not sent contemporaneously at the time they are drafted

18 constitute an "artificial or prerecorded voice" since they are written expressions, not

19 naturally occurring that contain previously recorded information.  On information and

20 belief, all of Defendant's messages, after they are created, are first stored in a "message

21 queue" before being delivered via SMS.

22        70.    As a result of Defendant's unlawful conduct, Plaintiff and members of the

23 Class have suffered actual damages and, under section 227(b)(3)(B), are each entitled,

24 *inter alia*, to receive a minimum of $500.00 in damages for each such violation of the

25 TCPA and its implementing regulation.

26        71.    To the extent that Defendant's misconduct is determined to be willful and

27 knowing, the Court should, pursuant to section 227(b)(3), increase the amount of

28 ///

Complaint for Damages Pursuant to the
Telephone Consumer Protection Act 47 U.S.C. § 227 et seq.

damages recoverable by the Class members in accordance with the said statutory provisions.

## **PRAYER FOR RELIEF**

WHEREFORE, Plaintiff and the Class, request the following relief:

A.    That the Court enter an order certifying the Class and appointing Plaintiff as the representative of the Class and appointing counsel for Plaintiff as lead counsel for the Class;

B.    That the Court enter an order declaring that Defendant's actions, as set forth above, violated the TCPA, 47 U.S.C. §§227(b) and its implementing regulations;

C.    That the Court enter judgment against Defendant for statutory damages and, if its conduct is proved willful, award Plaintiff and the Class increased damages equal to no more than three times their damages;

D.    That the Court award Plaintiff and the Class their costs and expenses, as well as reasonable attorneys' fees, in prosecuting this action;

E.    That the Court award Plaintiff and the Class post-judgment interest; and

G.    That the Court award such other and further relief as may be necessary or appropriate.

DATED: December 23, 2014

**HOWARD LAW PC**

/s/ Gregory H. D. Alumit
VINCENT D. HOWARD
GREGORY H. D. ALUMIT

**ARBOGAST LAW**
A Professional Corporation
DAVID M. ARBOGAST

**THE LAW OFFICES OF JOSEPH R. MANNING, JR.**
A Professional Corporation
JOSEPH R. MANNING, JR.
MICHAEL J. MANNING
PHILLIP B. NGHIEM

*Attorneys for Plaintiff and Proposed Class*

Complaint for Damages Pursuant to the
Telephone Consumer Protection Act 47 U.S.C. § 227 et seq.

1

## **TRIAL BY JURY**

2      Plaintiff is entitled to and hereby demands a trial by jury.

3

4      DATED: December 23, 2014          **HOWARD LAW PC**

5
                                        /s/ Gregory H. D. Alumit
6                                       VINCENT D. HOWARD
                                        GREGORY H. D. ALUMIT
7
                                        **ARBOGAST LAW**
8                                       A Professional Corporation
                                        DAVID M. ARBOGAST
9
                                        **THE LAW OFFICES OF JOSEPH R.**
10                                      **MANNING, JR.**
                                        A Professional Corporation
11                                      JOSEPH R. MANNING, JR.
                                        MICHAEL J. MANNING
12                                      PHILLIP B. NGHIEM
13

14

15                                      *Attorneys for Plaintiff and Proposed Class*

16

17

18

19

20

21

22

23

24

25

26

27

28

---

18                          Complaint for Damages Pursuant to the
                            Telephone Consumer Protection Act 47 U.S.C. § 227 et seq.